# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60038

United States Court of Appeals
Fifth Circuit

**FILED**

February 14, 2014

Lyle W. Cayce
Clerk

WILBERTO MIRESLES-ZUNIGA, Also Known as Wilberto Mireles,

Petitioner,

versus

ERIC H. HOLDER, JR., U.S. Attorney General,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

In 2012, the Department of Homeland Security initiated removal proceedings against Wilberto Miresles-Zuniga, who conceded removability because he had been convicted of a firearms offense and a crime of domestic violence. Although Miresles-Zuniga sought cancellation of removal, the immigration judge ("IJ") found that he was not statutorily eligible for that discretionary relief because of the "stop-time rule" in 8 U.S.C. § 1229b(d)(1). Because

No. 13-60038

the plain reading of that provision supports the IJ's application of the stop-time rule, we agree and deny the petition for review.

## I.

In 2002, Miresles-Zuniga, a citizen of Mexico, became a lawful permanent resident of the United States. Six years later he was convicted of the second-degree felony of aggravated assault against a family member under the Texas Penal Code[1]; in 2011, he was convicted of misdemeanor possession of a firearm. Based on those two convictions, the IJ ordered his removal under 8 U.S.C. § 1227(a)(2)(C) (firearm offenses) and 8 U.S.C. § 1227(a)(2)(E)(i) (crimes of domestic violence). During the removal proceedings, Miresles-Zuniga sought cancellation of removal under 8 U.S.C. § 1229b. The IJ, however, found him not to be statutorily eligible under § 1229b(a) based on the "stop-time rule." The BIA affirmed without opinion.[2] Miresles-Zuniga petitions this court arguing that the IJ—and by extension, the BIA—erred in applying the stop-time rule and that, as a result, he is statutorily eligible for cancellation of removal.

## II.

Congress stripped this court of jurisdiction to review final orders of removal, including any judgment regarding the granting of relief under § 1229b. *See* 8 U.S.C. § 1252(a)(2)(B)(i). The statute, however, explicitly

---

[1] This was a deferred adjudication conviction, but this court considers deferred adjudications under Texas law as a conviction for the purposes of immigration laws. *See Moosa v. I.N.S.*, 171 F.3d 994, 1005–06 (5th Cir. 1999).

[2] Although this court has the authority to review only the decision of the BIA, when the BIA affirms without opinion, we may review the IJ's decision as the final agency determination. *See Nakimbugwe v. Gonzales*, 475 F.3d 281, 283 (5th Cir. 2007).

No. 13-60038

exempted the review of constitutional claims or questions of law raised in a petition for review to an appropriate court of appeals. *See* 8 U.S.C. § 1252(a)-(2)(D). Therefore, although this court does not have jurisdiction to review the IJ's determination of removability, it can review whether, as a matter of law, Miresles-Zuniga's offense triggers the stop-time provision in § 1229b(d)(1). We review such questions *de novo. See Heaven v. Gonzales*, 473 F.3d 167, 171 (5th Cir. 2006).

We apply *Chevron*'s two-step analysis to determine whether the BIA's interpretation warrants *Chevron* deference.[3] Because, however, § 1229b(d)(1) is unambiguous according to its plain language with respect to the question presented, step one is not met. *Garcia-Carias*, 697 F.3d at 263. Therefore, because we give no deference to the BIA's interpretation of the statute, "th[is] court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* (citation and internal quotation marks omitted).

## III.

Under § 1229b, a permanent resident alien is eligible for the discretionary relief of cancellation of removal only if he "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for *7 years after having been admitted in any status*, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a) (emphasis added). In regard to the second requirement, the calculation of continuous residency is qualified by the stop-time rule:

> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed

---

[3] *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Garcia-Carias v. Holder*, 697 F.3d 257, 263 (5th Cir. 2012) ("As to its interpretation of immigration statutes, we defer to the Board to the extent prescribed by the two-step analysis set forth in *Chevron*.").

No. 13-60038

> to end . . . when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title . . . .

8 U.S.C. § 1229b(d)(1). Thus, according to the stop-time rule, the calculation of continuous residence is limited to only the period of residency before any qualifying offense referred to in § 1229b(d)(1).

Miresles-Zuniga became a permanent resident in 2002 and lived continuously in the United States until 2011, when he entered removal proceedings and was thereafter deported. That period of a nine-year, continuous residency, being longer than seven years, alone would meet the second requirement under § 1229b(a). If Miresles-Zuniga's 2008 conviction of aggravated assault against a family member—a second degree felony—qualifies as a stop-time offense under § 1229b(d)(1), however, his continuous residency for purposes of § 1229b(a) would stop at six years, one year short of statutory eligibility.

Regarding whether an offense triggers the stop-time rule, a plain reading of the statute requires what can be conceptualized as a two-step analysis. First, a court—or the appropriate agency—must look to whether the offense committed is "an offense referred to in section 1182(a)(2)," a section regarding inadmissible aliens. § 1229b(d)(1)(B). If it is such an offense, the court or agency must then look to whether that same offense "renders the alien inadmissible to the United States under section 1182(a)(2) of this title *or* removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title." *Id.* (emphasis added).[4]

---

[4] Section 1227 concerns deportable aliens. Subsections (a)(2) and (a)(4) concern those deportable for committing criminal offenses or posing security or related risks, respectively.

As for the first step, Miresles-Zuniga concedes that his conviction of aggravated assault of a family member is referred to in § 1182(a)(2) in that it constitutes a crime involving moral turpitude under that section. Section 1182(a)(2) states, in relevant part: "[A]ny alien convicted of, or *who admits having committed*, or who admits committing acts which constitute the essential elements of—(I) a crime involving moral turpitude (other than a purely political offense) . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i) (emphasis added). Because Miresles-Zuniga, through his lawyer, conceded before both the IJ and this court that his conviction is a crime of moral turpitude, he has committed an offence referred to in § 1182(a)(2) for purposes of § 1229b(d)(1).

We therefore turn to the second step: Does the offense referred to in § 1182(a)(2) render the alien inadmissible under that same section or removable under § 1227(a)(2) or 1227(a)(4)? The IJ ruled that the second step was met—and the time-stop rule triggered—because the crime of aggravated assault of a family member rendered the alien removable under § 1227(a)(2) as a crime of domestic violence. § 1227(a)(2)(E)(i).[5]

Miresles-Zuniga claims that the IJ erred because the unambiguous, plain reading of § 1229b(d)(1) requires that the offense referred to in § 1182(a)(2) causes removability under § 1227(a)(2) *as it is referred to under § 1182(a)(2)*. In other words, because Miresles-Zuniga's offense can be referred to as only a crime involving moral turpitude under § 1182(a)(2), he contends that the time-stop rule requires that the offense must also render him removable on that same basis—as a crime of moral turpitude, and not as a crime of

---

[5] In fact, it was partially under this section that the IJ removed Miresles-Zuniga, and Miresles-Zuniga conceded removability under this section during the removal proceedings: "The Court concludes that the Respondent's conviction for aggravated assault of a family member does in actuality render the Respondent removable under INA Section 237(a)(2)(C) and INA Section 237(a)(2)(E)(i). Indeed, the Respondent, through counsel, conceded that he was removable under both sections at a previous hearing."

domestic violence, under § 1227(a)(2). As a result, the argument continues, the stop-time rule is not triggered because a single commission of a crime of moral turpitude under § 1227(a)(2) can render an alien deportable only if committed within five years after the date of admission. *See* § 1227(a)(2)(A)(i)(I).

At its core, this issue becomes one of nomenclature: The same state offense can—and often will—be categorized differently for purposes of federal law depending on the context. For example, the same state offense may be characterized as a crime of violence under the sentencing guidelines but may also be a crime of moral turpitude in the immigration context.[6]

It is no different here. As Miresles-Zuniga concedes, his conviction of second-degree felony of aggravated assault against a family member under Texas law may be categorized in the immigration context both as a crime of moral turpitude and as a crime of domestic violence.

Contrary to Miresles-Zuniga's assertion, the plain reading of the statute does not require that an alien be removable as the offense is categorized under § 1182. The most natural reading of the phrase "offense referred to" focuses on the actual offense committed and not the characterization of that offense in § 1182. *See* § 1229b(d)(1). Congress has not otherwise indicated that the categorization of the offense within the contexts of inadmissibility or removability remains constant for purposes of the stop-time rule, and we decline to read such a limitation into its otherwise explicit language. Therefore, the fact that the same Texas offense is referred to in one section as a crime involving moral

---

[6] *See United States v. Cruz-Campos*, No. 13-40334, 2014 WL 116437, at *1 (5th Cir. Jan. 14, 2014) (per curiam) (unpublished) (holding that a Pennsylvania aggravated-assault conviction constituted a crime of violence for purposes of the federal sentencing guidelines); *Pichardo v. I.N.S.*, 104 F.3d 756, 759–60 (5th Cir. 1997) (holding that a Pennsylvania aggravated-assault conviction constituted a crime of moral turpitude for purposes of removal).

No. 13-60038

turpitude but renders the alien removable under a separate section as a crime of domestic violence is not contrary to the statutory language.

In summary, Miresles-Zuniga's conviction of aggravated assault of a family member triggers the stop-time rule and denies him eligibility for cancellation of removal.[7]  The petition for review is therefore DENIED.

---

[7] The petition might also be denied on the alternate ground that the stop-time rule is triggered because Miresles-Zuniga's offense is referred to in § 1182(a)(2) and renders him inadmissible under that section.  *See* 8 U.S.C. § 1229b(d)(1).  We need not decide that.